# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 13, 2013 Session

## STATE OF TENNESSEE v. REGINALD LAMONT GRAHAM

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1466     Monte Watkins, Judge**

---

**No. M2012-02379-CCA-R3-CD - Filed September 27, 2013**

---

The defendant, Reginald Lamont Graham, appeals his Davidson County Criminal Court jury convictions of the attempted sale of cocaine, claiming that the evidence was insufficient to support his convictions.[1]  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

David Dearolf (on appeal); and George Thompson (at trial), Nashville, Tennessee, for the appellant, Reginald Lamont Graham.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle Consiglio Young, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's convictions relate to events that occurred on February 23, 2011, in Nashville.  On February 22, 2011, in response to anonymous resident complaints about the sale of drugs, Officer Shedie Herbert of the Metropolitan Nashville Police Department ("Metro") Metropolitan Development and Housing Authority ("MDHA") Task Force began surveillance at 1308 14th Avenue South, an apartment in the Edge Hill properties.  Residents had complained that "a large male who was bald headed who drove a white vehicle . . . was the primary person dealing these drugs" from apartment 1308.

---

[1]The defendant does not challenge his conviction of contributing to the delinquency of a minor.

Officer Herbert said that the property manager provided him a key to an apartment located directly across a grass walkway or "cut" from apartment 1308 to utilize for surveillance. During his surveillance on February 22, 2011, Officer Herbert observed the defendant, the defendant's uncle, Michael Graham, and the defendant's son, 14-year-old L.L., inside the apartment.[2] Officer Herbert also observed and photographed Charles Matthews, "an alias of Charles Edwards," the defendant's mother, and an unidentified woman visit the apartment.

Officer Herbert resumed his surveillance on the following day. Shortly after he arrived, he saw two men, one of whom he knew as "Rio," arrive at apartment 1308, and he heard Rio say, "[Y]ou want to wait? You can get some, too." L.L. opened the door for the men. Shortly thereafter, Mr. Matthews, "aka Charles Edwards," arrived at the apartment and went inside. Rio and Mr. Matthews then exited the apartment and sat on the porch. Within five minutes, L.L. let the men back inside the apartment, and the defendant arrived three minutes later. Mr. Matthews left the apartment within five minutes of the defendant's arrival, followed shortly thereafter by Rio. Wade Webb arrived at apartment 1308 at 3:14 p.m. and left at 3:16 p.m. The defendant and L.L. then left at 3:31 p.m., followed three minutes later by Mr. Graham.

Officer Herbert testified that he maintained constant contact with other officers on the Task Force, who he dispatched to intercept the individuals who had exited the apartment and to execute a search warrant at apartment 1308. The defendant, Mr. Graham, L.L., and Alicia Lamkins, mother of L.L., were secured inside the apartment during the search. Officer Herbert said that during that time, Mr. Graham showed signs of excessive sleepiness, and "then he took his folding chair and scooted a distance of about six or eight feet over to [L.L.], who's 14, and he put his arm around him and got real close to him and acted like he was going to go to sleep." Officer Herbert found the behavior "very unusual" and made the decision to separate L.L. from the group. He said that Mr. Graham became "very irritated" but complied with the order to "scoot away."

Officer Herbert testified that when he indicated to Mr. Graham that officers would be conducting a search of Mr. Graham's person, Mr. Graham "became very agitated" and "kept taking his hand and jabbing it toward his buttocks or toward his rectum." Mr. Graham denied having any contraband in his rectum but refused all efforts to search. Officer Herbert said that "it took about four or five officers to hold him down. He was continuing to stick his fingers up his rectum, and we kept getting his hand out from under him." During

---

[2]The record does not clearly establish whether L.L. was the defendant's biological son or simply the son of the defendant's significant other. Additionally, the record did not clearly establish whether the defendant was actually married to Mr. Lamkins' mother. We will refer to this minor individual by his initials.

the struggle, "a packet came out of his rectum and landed on the kitchen floor and that packet contained either 3.4 or 3.6 grams of cocaine and . . . about 2.6 grams of marijuana." Officer Herbert said that he and his fellow officers assumed at first that the powder cocaine was crack but that Mr. Graham corrected them.

Officers stopped the defendant's car and searched his person before returning him to the apartment. Officers seized $811 cash from the defendant's person during the search. Officer Herbert said that officers questioned the defendant during the search of the apartment. When another officer told the defendant that Mr. Webb claimed to have purchased drugs from "Graham," the defendant "went into a kind of sermon" and in reference to Mr. Webb, said,

> "[T]hat's one of my puppies and your puppies don't turn on you if you take care of them. If you give your puppies milk, you give them a place to sleep, you give your puppies food and your puppies don't turn on you. They don't go into somebody else's yard unless somebody else offers them something else better."

Officer Herbert said that photographs and other personal items indicated that the defendant lived in apartment 1308 with Ms. Lamkins and her children.

Officer Herbert testified that the cocaine recovered from Mr. Webb and Mr. Matthews was wrapped in "bindles" created by cutting up pages of the telephone book. Officers discovered pages of a telephone book from which the "bindles" had been cut inside apartment 1308.

During cross-examination, Officer Herbert acknowledged that no drugs were recovered from the defendant's person and that he did not personally observe the defendant complete a sale of drugs. He added, "[W]hat I can say is that he was in and out of the apartment, that people waited on him to arrive and did not leave until they made contact with the defendant, Reginald Graham."

Metro Officer Joe Edenfield testified that on February 23, 2011, Officer Herbert directed Officer Edenfield to stop Mr. Matthews, who was riding a bicycle. Officer Edenfield said that a search by consent of Mr. Matthews' person yielded a small amount of crack cocaine wrapped in a piece of the telephone book paper inside Mr. Matthews' hat brim. After issuing Mr. Matthews a citation in lieu of arrest for possession of crack cocaine, Officer Edenfield stopped the defendant at the request of Officer Herbert. The defendant was driving a white Grand Marquis or Crown Victoria, and L.L. was his passenger. Officer Edenfield recovered $811 from the defendant's person but found no drugs on the defendant's

person.

Officer Greg McDaniel testified that during surveillance of apartment 1308, he remained "within a block of the target location" to await commands from Officer Herbert. Eventually Officer Herbert instructed him to stop a purple Chrysler van after the occupant "went in the apartment for a brief minute." Officer Herbert said that he stopped the vehicle and questioned the occupant, Mr. Webb. During this questioning, Mr. Webb removed "a folded up piece of paper from his sock" and gave it to Officer McDaniel. The paper contained .2 grams of crack cocaine. He issued Mr. Webb a citation in lieu of arrest and then went to assist Officer Edenfield in his stop of the defendant. After completing the defendant's stop, Officer McDaniel returned to apartment 1308 to assist in executing the search warrant.

During cross-examination, Officer McDaniel said that officers did not attempt a controlled buy from the defendant because they did not have "a confidential informant that could buy from the Edge Hill area," explaining that other efforts to effectuate a controlled buy in that area had been "shut down."

Thomas Corritore, property manager at MDHA Edge Hill Apartments, testified that Ms. Lamkins was the leaseholder of apartment 1308, and she listed six children, including L.L. and three children who bore the surname Graham, as living with her. Mr. Corritore said that in the months leading up to February 22, 2011, several residents informed him anonymously "of a lot of traffic, foot traffic in and out of the apartment and drug sales out of that apartment." Mr. Corritore said that he, too, had noticed "some people hanging around" apartment 1308. Mr. Corritore reported the complaints to the head of MDHA security. He explained that "MDHA has a policy of zero tolerance for drugs" that leads to an automatic three-day eviction. He said that the MDHA policy and task force make the residents "feel safe."

Tennessee Bureau of Investigation Special Agent and Forensic Scientist Donna Jacobsen testified that forensic testing established that the two small amounts of "rock-like" and "chunky" substance were cocaine base. The 3.4-gram substance that she tested separately was cocaine powder rather than cocaine base.

Mr. Graham testified that the defendant, his nephew, lived at 1308 14th Avenue South in February 2011 and that he did not know the defendant to have another residence. In February 2011, Mr. Graham stayed with the defendant periodically. Mr. Graham said that on February 23, 2011, the defendant sold crack cocaine to Mr. Matthews and Mr. Webb. Mr. Graham acknowledged that he possessed powder cocaine on that date, but he claimed that the cocaine was for his own personal use and that he had earned the

cocaine in exchange for work he performed at "the Beer Barn." Mr. Graham also admitted that he had helped the defendant sell drugs from apartment 1308.

During cross-examination, Mr. Graham said that the defendant used cuttings from the telephone book to wrap the drugs that he sold. Mr. Graham maintained that the drugs sold to Mr. Webb and Mr. Matthews did not come from Mr. Graham's personal stash of cocaine.

Following Mr. Graham's testimony, the State rested. After a *Momon* colloquy, *see State v. Momon*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected not to testify and chose not to present any proof. The jury convicted the defendant, originally charged with two counts of the sale of less than .5 grams of a substance containing cocaine in a school zone, of two counts of attempted sale of less than .5 grams of a substance containing cocaine.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant contends that the evidence was insufficient to support his convictions. His argument is two-fold: first, he claims generally that the State failed to establish beyond a reasonable doubt that it was he who provided crack cocaine to Messers Matthews and Webb, and, second, he claims that because the evidence established the completed offense of the sale of crack cocaine, the evidence was insufficient to support his convictions of the attempted sale of crack cocaine.[3] The State contends that the evidence was sufficient to support the defendant's convictions and that the fact that the evidence established a completed offense does not render insufficient the evidence of attempted sale of cocaine. We agree with the State on both points.

We review the defendant's challenge to the sufficiency of the evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are

_____

[3]Notably, the defendant does not contend that the trial court erred by providing a jury instruction on the attempted sale of cocaine as a lesser included offense of the sale of cocaine.

resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"It is an offense for a defendant to knowingly [s]ell a controlled substance." T.C.A. § 39-17-417(a)(3) (2006). A substance containing cocaine is a Schedule II controlled substance. *Id.* § 39-17-408(b)(4). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." *Id.* § 39-12-101(a)(2).

Here, the evidence established that Mr. Matthews and Mr. Webb came to apartment 1308, awaited the arrival of the defendant, and then left shortly after the defendant's arrival. When stopped by officers en route from apartment 1308, both Mr. Matthews and Mr. Webb were in possession of crack cocaine wrapped in scraps of a page from the telephone book. Officers discovered the page from which the scraps had been cut inside apartment 1308. Photographs and other personal items established that although the defendant was not the leaseholder for apartment 1308, he lived there with Ms. Lamkins and Ms. Lamkins' children, three of whom bore the defendant's surname. Mr. Graham testified that he stayed with the defendant at apartment 1308, that the apartment was the defendant's only residence, and that he helped the defendant sell drugs. Mr. Graham said that the defendant sold crack cocaine wrapped in cuttings from the telephone book to Mr. Matthews and Mr. Webb on February 23, 2011. Officers discovered a large amount of cash in the defendant's possession at the time of his arrest. Although the defendant makes much of the fact that no drugs were found on his person and that the proof did not show that he possessed the drugs hidden in Mr. Graham's rectum, neither point affects his conviction because he was not charged with or convicted of the possession of cocaine. In our view, the proof clearly established that the defendant intended to commit the offense of the sale of cocaine and that he completed an act in furtherance of that crime.

Our view of the evidence does not change because the evidence could have supported a conviction of the charged offense of sale of less than .5 grams of a substance containing cocaine. The defendant, citing *State v. Kevin Fritz Edwards*, argues that because the evidence did not establish that he tried and failed to commit the sale of crack cocaine, the evidence was insufficient to support his conviction. In reaching its conclusion that the evidence was insufficient to support Edwards' conviction, the *Kevin Fritz Edwards* panel concluded "that by acquitting him of the aggravated sexual battery charge the jury rejected [the victim's] testimony that [Edwards] repeatedly touched her breasts, buttocks, and vagina." *State v. Kevin Fritz Edwards*, No. E2010-01731-CCA-R3-CD, slip op. at 13 (Tenn.

Crim. App., Knoxville, May 18, 2012). This conclusion overlooks an important point: The jury, as the sole arbiter of the facts and the credibility of the witnesses, was free to accredit any portion of any witness's testimony as it saw fit. *See State v. Allen*, 69 S.W.3d 181, 189 (Tenn. 2002) ("The jury is not required to believe any evidence offered by the State."); *see also* Tenn. Const. art. I, § 19 ("[T]he jury shall have a right to determine the law and the facts[.]"). The jury's decision to convict on a lesser included offense does not necessarily equate with a wholesale rejection or adoption of any particular witness's testimony.

Moreover, despite language to the contrary, the *Kevin Fritz Edwards* panel's decision on the sufficiency of the convicting evidence was colored by its apparent belief that, to support a conviction of criminal attempt, the State must show that the defendant tried and failed to complete the offense. Failure to complete the offense, however, is not an element of criminal attempt. As our supreme court has observed, "the criminal attempt statute requires that the State prove two material elements: the culpability required for the attempted crime; and an act or acts in furtherance of the attempted crime." *Wyatt v. State*, 24 S.W.3d 319, 323 (Tenn. 2000). The holding in *Kevin Fritz Edwards* elevates a defendant's failure to complete an offense to the status of an element of that offense, an outcome clearly not contemplated by the legislature, which *removed* as a defense "that the offense attempted was actually committed." T.C.A. § 39-12-101(c).

Both the defendant and the panel in *Kevin Fritz Edwards* cited *State v. Parker*, 350 S.W.3d 883 (Tenn. 2011), in support of a finding that proof of a completed crime renders insufficient the evidence of an attempt. In *Parker*, our supreme court overruled dicta from *State v. Mellons*, 557 S.W.2d 497 (Tenn. 1977), which had been cited for the proposition that a conviction of a lesser included offense would not be reversed for want of evidence when the evidence was sufficient to support a conviction of the greater offense. *State v. Parker*, 350 S.W.3d 883, 907 (Tenn. 2011) ("The proposition for which the majority below relied on it is, in fact, mere dictum."). Parker, originally charged with felony murder in the death of the elderly victim, was convicted of the lesser included offense of second degree murder. *Id.* at 888. The supreme court observed that evidence that Parker struck the elderly victim while attempting to rape her, thereby causing the injury that led to the victim's death, would have supported a conviction of felony murder but that the record was devoid of any proof that Parker knowingly killed the victim, a requirement for a conviction of second degree murder. *Id.* at 909-10. The court observed that "when reviewing a convicted defendant's claim that the evidence is not sufficient to support his or her conviction, the review must be undertaken with respect to the crime of which the defendant was convicted, not the crime with which he was charged." *Id.* at 907 (citing *Jackson*, 443 U.S. at 324 n.16). The court held that the fact "[t]hat the proof may support conviction of a different, even a 'greater,' offense does not obviate the constitutional requirement that the proof support each and every element of the offense for which the defendant was *actually* convicted." *Parker*, 350 S.W.3d

at 907. The court reiterated that, using our traditional standard of review for the sufficiency of the evidence, "[i]f the proof does not adequately support each and every element, the defendant is entitled to a reversal of the conviction" and concluded that "[t]o sustain a conviction of a lesser-included offense, the proof must be sufficient to support each and every element of the conviction offense. To the extent that *Mellons* and its progeny hold to the contrary, they are overruled." *Id.* at 909.

As indicated, absence of a completed offense is not an element of the offense of criminal attempt. Thus proof that the defendant actually completed the sale of crack cocaine does not render insufficient the evidence that he attempted the sale of crack cocaine. The proof adduced at trial established the necessary elements of attempted sale of crack cocaine, that the defendant intended to sell crack cocaine, and that he committed an act in furtherance of that crime. Nothing more was required.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE